IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| QUANG D. NGUYEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-22-1102-D |
| | ) | |
| LOUIS DeJOY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 21]. Plaintiff, appearing pro se, filed a Response [Doc. No. 26], and Defendant filed a Reply in Support [Doc. No. 31]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff alleges a variety of employment discrimination claims against his former employer, the United States Postal Service (USPS). Plaintiff alleges that he was discriminated against based on his race (Asian), national origin (Vietnamese), age (58), gender (male), and disability ("on-the-job injury"). Plaintiff further alleges that he was subjected to a hostile work environment; retaliated against for engaging in EEO activities; and constructively discharged.

To summarize the Amended Complaint [Doc. No. 12], Plaintiff alleges[1]:

---

[1] Throughout his amended complaint, Plaintiff refers to claims brought by his wife, Rosalinn Giang. Ms. Giang has a separate lawsuit pending against Defendant in the United States District Court for the Western District of Oklahoma, Case No. CIV-22-112-D. Several sections of Plaintiff's amended complaint appear to be copied from Ms. Giang's complaint, in her point of view. [Doc. No. 12, at 6] ("My husband and I are losing 12 hours

1

- Plaintiff filed, or assisted other employees in filing, fifteen EEO complaints between June 2016 and November 2016;

- Plaintiff represented his wife at her EEO redress mediation on November 1, 2016, which addressed complaints against Tameeka Jones and Plaintiff's manager, Cheryl Mitchell;

- After Plaintiff filed a worker's compensation injury claim, Defendant sent him home from November 13, 2016, to April 9, 2017, even though he was authorized to perform eight hours of work per day with certain restrictions;

- Although Plaintiff's worker's compensation injury claim was approved in February of 2017, he was not permitted to return to work until April 9, 2017;

- During this time, Plaintiff was mistakenly placed on the schedule to work December 25 and January 1, but Defendant sent him home both days;

- Upon returning to work on April 9, 2017, Plaintiff was only permitted to work four hours per day;

- Plaintiff was told that there were no duties available within Plaintiff's injury restrictions;

- Plaintiff was forced to use four hours of Leave Without Pay (LWOP) each day from April of 2017 to March of 2018;

- Plaintiff did not attend work from March 18-31, 2018, and was threatened to be disciplined for attendance;

- For his period of absence in March of 2018, Plaintiff was charged 76 hours of LWOP, and Plaintiff's supervisor declined to change the coded LWOP to sick leave;

- Being limited to four hours of work per day forced Plaintiff into financial crisis;

- Plaintiff was notified by a manager that he would be limited to four hours of work per day as long as he worked for Defendant;

- After sixteen months of working reduced hours, Plaintiff could no longer stand Defendant's decision to limit his work hours and was forced to retire early; and

- After retirement, the USPS payroll department in Eagan, Michigan failed to correct an issue with his TSP account and hung up on Plaintiff.

---

of leave every month..."). For purposes of Plaintiff's claims, the Court ignores references to allegations of discrimination or retaliation against Ms. Giang.

Apart from the foregoing allegations, Plaintiff's amended complaint is replete with conclusory statements that "Plaintiff was subjected to an ongoing pattern of discrimination, retaliation, harassment, [and] hostile pervasive work environment," and buzz words designed to state the elements of various employment claims. For example, Plaintiff repeatedly alleges:

> The Defendant's management officials aggressively subjected us to be victims of reprisal actions directed against us; and aggressively, constantly created a more severe pattern of ongoing, hostile, violent, pervasive work environment including: threatening, stalking, screaming, yelling, cursing with profanity, unlawful employment discrimination, retaliation toward the Plaintiff and his wife.

[Doc. No. 12, at 3].

Plaintiff's amended complaint is not a model of clarity. Liberally construed, Plaintiff asserts the following claims against Defendant: employment discrimination, retaliation, and hostile work environment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. (Title VII); employment discrimination in violation of The Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq*. (ADEA); constructive discharge; and disability discrimination in violation of The Rehabilitation Act of 1973, 29 U.S.C. §§ 791, *et seq*. (Rehabilitation Act). Plaintiff also alleges deprivation of civil rights in violation of 42 U.S.C. § 1983 and a violation of The Notification and Federal Employee Antidiscrimination and Retaliation Act (No FEAR Act), Pub. L. No. 107-174, 116 Stat. 566 (2002).

In his Motion to Dismiss [Doc. No. 21], Defendant asserts that Plaintiff has failed to state claims upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6).

3

Defendant contends that Plaintiff has failed to connect any of Defendant's actions to discriminatory or retaliatory animus; and that Plaintiff's amended complaint evinces obvious alternative reasons for Defendant's conduct, rendering inferences to invidious discrimination implausible.

### STANDARD OF DECISION

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The statement must be sufficient to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citation omitted). Under this standard, a complaint needs "more than labels and conclusions," but it "does not need detailed factual allegations." *Id*. Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

At the pleading stage, the Court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). However, "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[] [has] not nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotations and

citation omitted). Although pro se pleadings are to be liberally construed, district courts should not "assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## DISCUSSION

### I. 42 U.S.C. § 1983

Plaintiff attempts to state a claim of deprivation of civil rights under Section 1983. However, "Title VII provides the exclusive judicial remedy for discrimination claims in federal employment." *Ford v. West*, 222 F.3d 767, 773 (10th Cir. 2000); *see also Mobley v. Donahoe*, 498 F. App'x 793, 796 (10th Cir. 2012) ("Title VII is the exclusive remedy for [the plaintiff's] claims of discrimination and associated retaliatory conduct… This precludes his claims asserted under the civil-rights statutes…."). Here, because Plaintiff bases his Section 1983 claim on the same allegations underlying his Title VII claims, Plaintiff's Section 1983 claim will be dismissed with prejudice.

### II. No FEAR Act

Plaintiff also attempts to bring a claim under the No FEAR Act, which holds federal agencies accountable for violations of antidiscrimination laws by requiring the agencies to: report statistical data related to EEO complaints; and pay discrimination damage awards out of agency funds rather than the General Fund of the Treasury. No FEAR Act of 2002, Pub. L. No. 107-174, 116 Stat. 566; *see also* 29 C.F.R. §§ 1614.701-707. Fatal to Plaintiff's claim, the No FEAR Act does not create a private right of action to pursue damages against the federal government, its officers, or employees. *See, e.g., Glaude v. United States*, 248 F. App'x 175, 177 (Fed. Cir. 2007) ("[The] Act does not create a substantive right for which

the government must pay damages…."). Accordingly, Plaintiff's No FEAR Act claim will be dismissed with prejudice.

### III. Discrimination Based on Race, Gender, National Origin, or Age

Plaintiff alleges that his employer discriminated against him based on his race, national origin, gender, and age, all in violation of Title VII and the ADEA. Title VII makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under the ADEA, "[i]t shall be unlawful for an employer … to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

For Title VII claims, "[w]hile the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *see also Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1054 (10th Cir. 2020) (same in ADEA context). Here, Plaintiff's amended complaint contains no evidence of direct discrimination. Accordingly, the Court evaluates the plausibility of Plaintiff's claims by "examin[ing] the first step of the *McDonnell Douglas* framework: the elements [Plaintiff] would need to establish to prove" prima facie cases for his discrimination claims based on race, gender, national origin, and age. *See Morman v. Campbell County Memorial Hosp.*, 632 F. App'x 927, 933

(10th Cir. 2015). A plaintiff establishes a prima facie case of discrimination by showing that "(1) the victim belongs to a class protected by Title VII, (2) the victim suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021) (quoting *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)).

The crux of Plaintiff's discrimination allegations stem from Defendant's response to Plaintiff's workplace injury claim and resulting restrictions. Plaintiff alleges that, "as soon as Plaintiff reported a job injury and filed an injury claim," he was sent home from November of 2016 to April of 2017 [Doc. No. 12, at 4]. Plaintiff filed his injury claim under the Federal Employees' Compensation Program, which is administered by the Office of Workers' Compensation Programs.

Upon returning to work on April 9, 2017, Plaintiff alleges that Defendant limited him to four-hour workdays; cut his compensation in half by limiting his work hours; and forced Plaintiff to code the remaining four hours of each day as Leave Without Pay (LWOP). According to Plaintiff, other employees who were injured on the job were assigned modified duties and permitted to work eight hours per day within their restrictions [Doc. No. 12, at 31]. As reflected in Plaintiff's amended complaint, Plaintiff could apply to be reimbursed by the Department of Labor for the four hours of LWOP each day, but Plaintiff takes issue with the reimbursement rate and how long it took to be reimbursed. [Doc. No. 12, at 6].[2]

---

[2] "[W]hen application is made for FECA benefits, the determination of coverage is made by the Secretary of Labor or his designee and his finding is final and not subject to judicial

Plaintiff further alleges that he was disciplined for attendance when he did not go to work from March 18 – 31, 2018; his period of absence was coded as LWOP instead of sick leave; the USPS payroll office in Eagan, Michigan failed to correct an issue with his TSP account after retirement; and he was threatened to be charged as "absent without official leave" after he had already retired. Based on these allegations, Plaintiff contends that he was discriminated against based on his race, national origin, gender, and age.

Ignoring the conclusory allegations of Plaintiff's amended complaint, Plaintiff does not provide the Court with any basis to infer that Plaintiff was treated differently because of his race, national origin, gender, or age. "Title VII does *not* make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal. It prohibits only intentional discrimination *based upon* an employee's protected class characteristics." *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1319 (10th Cir. 1992) (emphasis in original).

Plaintiff's references to other injured employees' genders, races, national origins, and ages are insufficient to allege discrimination, especially considering Plaintiff's failure to allege that the employees permitted eight-hour workdays were under the same injury restrictions as Plaintiff. As Defendant notes, Plaintiff's references to other injured employees' modified duty assignments reflect that those employees had fewer restrictions

---

review…. Acceptance of benefits under the FECA is an injured employee's exclusive remedy." *Swafford v. United States*, 998 F.2d 837, 839 (10th Cir. 1993) (quoting *Cobia v. United States*, 384 F.2d 711, 712 (10th Cir. 1967)). Accordingly, to the extent Plaintiff disputes how his FECA claim was processed by the Office of Workers' Compensation Programs, or the rate of reimbursement for his four hours of LWOP each day, this Court does not have jurisdiction over such claims.

than Plaintiff. Per Plaintiff's restrictions, he was not permitted to perform "simple grasping" or "fine manipulation" for more than four hours per day. [Doc. No. 12-25, at 1]. As reflected in the modified assignments attached to Plaintiff's amended complaint, other injured employees' restrictions permitted "manipulation of hands for working mail" for up to eight hours; "simple grasping" for up to eight hours; or a combination of different activities that, together, met eight hours.[3] [Doc. No. 12-24]. Although Plaintiff alleges that his employer should have interpreted his restrictions as allowing four hours of simple grasping *followed by* four hours of fine manipulation, it is clear from Plaintiff's amended complaint that his employer did not believe Plaintiff could perform "fine manipulation" without "simple grasping." [Doc. No. 12, at 53] (referencing an e-mail from Plaintiff's Plant Manager, Sean Walton, who allegedly asked "How can you perform fine manipulation without simple grasping? Everything you do involves simple grasping."). Critically, Plaintiff has failed to connect Defendant's interpretation of Plaintiff's injury restrictions to discriminatory animus based on his race, national origin, gender, or age. Accordingly, Plaintiff's Title VII and ADEA claims will be dismissed.

## IV.   Rehabilitation Act – Disability Discrimination

Plaintiff also asserts a claim for disability discrimination in violation of the Rehabilitation Act. To make out a prima facie case of disability discrimination under the Rehabilitation Act, Plaintiff must allege facts showing 1) he is disabled within the meaning

---

[3] [Doc. No. 12-24, at 4] (modified assignment of injured employee permitted up to six hours of casing letters, up to one hour of trashing waste letters, and up to one hour of straightening mail trays).

of the Act; 2) he is otherwise qualified for the job; and 3) he was discriminated against because of his disability. *See Woodman v. Runyon*, 132 F.3d 1330, 1338 (10th Cir. 1997).

First, the Court finds that Plaintiff has not alleged he is disabled within the meaning of the Rehabilitation Act. Disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C); *see also McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004) (explaining that Rehabilitation Act claims are analyzed using the definition of "disability" found in the Americans with Disabilities Act). In analyzing whether a plaintiff is disabled as defined by the Act, courts: 1) decide whether the plaintiff has a mental or physical impairment; 2) identify the life activity and determine whether it constitutes a major life activity under the Act; and 3) decide whether the impairment substantially limits the life activity. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

Here, Plaintiff mentions his disability only when stating his various protected classes, and with little to no specificity. For instance, Plaintiff repeatedly describes his alleged disability as: "disability (injury on duty)"; "disability (physical, job-related injury)"; and "disability (disability as related to his spine and left shoulder due to job related injury)." Most often, Plaintiff merely refers to himself as an "on-the-job-injury employee" and alleges that his injury had gradually improved after filing his injury claim. These allegations are not sufficient for the Court to determine whether Plaintiff is disabled within the meaning of the Rehabilitation Act. *See Davenport v. Sugar Mountain Retreat, Inc.*, 2009 WL 3415240, at *2 (N.D. Okla. Oct. 16, 2009) (dismissing a disability discrimination claim

10

where the plaintiff's general allegations of having a disability did not provide the court with sufficient allegations to determine whether the plaintiff was disabled within the meaning of the ADA); *Simmons v. Kendall*, 2022 WL 4775953, at *1 (W.D. Okla. Sept. 30, 2022) (dismissing failure-to-accommodate claim, finding the plaintiff's allegation that she "suffer[ed] from various mental health disabilities, some of which affect her test taking abilities" insufficient to identify her impairment). For this reason, Plaintiff's disability discrimination claim will be dismissed.[4]

Further, Plaintiff has failed to allege that he was discriminated against *because of* any alleged disability. Even viewing all reasonable inferences in Plaintiff's favor, Plaintiff's conclusory allegations of disability discrimination are undercut by the fact that the individuals who were allegedly given eight-hour workdays also suffered from workplace injuries, if not disabilities, which required modified assignments. This renders it implausible that Defendant discriminated against Plaintiff because of a disability. Ignoring the conclusory statements of Plaintiff's amended complaint, Plaintiff's remaining allegations do not state a plausible claim of disability discrimination.

## V. EEO Retaliation

Under Tenth Circuit law, a prima facie case for retaliation requires Plaintiff to show: (1) he engaged in protected opposition to Title VII discrimination; (2) he suffered an

---

[4] Plaintiff does not couch his Rehabilitation Act claim as one for failure to accommodate, but rather alleges that Defendant's refusal to provide him with an eight-hour workday was discrimination and/or retaliation. However, even if the Court were to construe Plaintiff's amended complaint as alleging a failure-to-accommodate claim under the Rehabilitation Act, such a claim would similarly fail for Plaintiff's failure to allege a disability as defined by the Act.

adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004). "The adverse action must amount to a significant change in employment status, such as firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (internal quotations omitted). "For a retaliation claim under Title VII, an adverse employment action is something that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Lincoln v. Maketa*, 880 F.3d 533, 540 (10th Cir. 2018) (citation omitted).

Upon careful consideration of Plaintiff's amended complaint, the Court finds Plaintiff's allegations to be minimally sufficient to state a plausible claim that Plaintiff was retaliated against for engaging in EEO activities. Plaintiff alleges that he represented himself and others in filing fifteen EEO complaints between June of 2016 and November of 2016, to include representing his wife at an EEO redress mediation opposite Tameeka Jones and Plaintiff's supervisor, Cheryl Mitchell, in early November of 2016. On November 13, 2016, after Plaintiff filed an injury claim, Defendant sent Plaintiff home pending approval of his injury claim. Plaintiff alleges that Defendant did not send other employees home while their injury claims were pending. Further, Plaintiff alleges that he was not permitted to return to work until April of 2017, even though his injury claim had been approved in February. When he was allowed to work, he alleges that Defendant refused to find duties within his restrictions and limited his work hours to four hours per day.

Viewing all reasonable inferences in Plaintiff's favor, Plaintiff's allegations are sufficient to nudge the retaliation claim across the line from conceivable to plausible. Accordingly, Defendant's motion to dismiss is denied as to EEO retaliation.

## VI.   Hostile Work Environment

Plaintiff also alleges a hostile work environment claim. First, as Plaintiff has failed to link Defendant's alleged conduct to discriminatory animus, any hostile work environment claim based on Title VII or ADEA discrimination fails. *See Brown v. LaFerry's LP Gas Co., Inc.*, 708 F. App'x 518, 522 (10th Cir. 2017) ("In order to establish a race-based hostile work environment, however, the conduct that allegedly created that environment must be racial or motivated by racial animus…").

For his hostile work environment claim based on EEO retaliation, Plaintiff "must demonstrate that the alleged harassment stemmed from retaliatory animus" and that the retaliatory conduct was "sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment." *See Gorny v. Salazar*, 413 F. App'x 103, 112 (10th Cir. 2011); *see also Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (quotations and citation omitted) ("An employer creates a hostile work environment when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."). Further, a plaintiff "must show that the environment was both objectively and subjectively hostile or abusive," and the objective severity of the harassment is assessed "from the perspective of a reasonable

13

person in the plaintiff's position, considering all the circumstances." *Morris*, 666 F.3d at 664 (quotations and citation omitted).

For most of Plaintiff's amended complaint, he merely concludes that Defendant "constantly created a more severe pattern of ongoing, hostile, violent, [and] pervasive work environment." [Doc. No. 12, at 3]. Plaintiff's vague references to "an ongoing series of related incidents" are insufficient. In the few instances where Plaintiff alleges specific instances of harassment, his allegations do not support a plausible hostile work environment claim. Plaintiff alleges: he was limited to four-hour workdays after reporting a workplace injury; he was threatened by management to be disciplined for absences when he missed work [Doc. No. 12, at 63]; after he retired, he was sent an AWOL inquiry and asked to come in for an investigative interview related to his potential AWOL status [Doc. No. 12, at 71]; his management pretended not to know that Plaintiff had already retired [Doc. No. 12, at 77]; and after his retirement, Plaintiff's co-worker drove a golf cart through the workplace announcing that Plaintiff had retired [Doc. No. 12, at 78].

Even viewing all reasonable inferences in Plaintiff's favor, Plaintiff has not pled facts to show that the alleged harassment was severe or pervasive from the perspective of a reasonable person. "[C]omplaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor are not actionable under Title VII." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) (quotations and citation omitted). Plaintiff's allegations underlying his hostile work environment claim, most of which occurred *after he retired*, do not show severe or pervasive retaliatory harassment

14

from the perspective of a reasonable person. Accordingly, Plaintiff's hostile work environment claim will be dismissed.

## VII.  Constructive Discharge

"Constructive discharge occurs when an employer unlawfully creates working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." *Strickland v. United Parcel Service, Inc.*, 555 F.3d 1224, 1228 (10th Cir. 2009) (quotations and citation omitted). "[N]ot every unhappy employee has an actionable claim of constructive discharge pursuant to Title VII." *Bolden v. PRC Inc.*, 43 F.3d 545, 552 (10th Cir. 1994). "An employee who voluntarily resigns cannot prevail on a theory of constructive discharge." *Dulany v. Brennan*, 736 F. App'x 199, 204 (10th Cir. 2018) (citation omitted). "The question is not whether the employee's resignation resulted from the employer's actions, but whether the employee had any other reasonable choice but to resign in light of those actions." *Tran v. Trustees of State Colleges in Colo.*, 355 F.3d 1263, 1270 (10th Cir. 2004).

Plaintiff's constructive discharge claim is based on Defendant's decision to limit Plaintiff to four-hour workdays and Defendant's refusal to reconsider that decision. Although Plaintiff acknowledges that he could be reimbursed by the Department of Labor for the remaining four hours of each workday, he was dissatisfied with the lengthy reimbursement process and reimbursement rate. Plaintiff's amended complaint reflects that he accepted the four-hour modified duty from Defendant on May 10, 2017 [Doc. No. 12-75]. For his constructive discharge claim, Plaintiff alleges that, after working the modified duty for approximately one year, he was constructively discharged when he retired in April

15

of 2018. Plaintiff connects his decision to retire to needing to withdraw money from his retirement account to pay back loans he borrowed from relatives and credit companies [Doc. No. 12, at 63].

Plaintiff has failed to allege that Defendant retaliated against him to the point where a reasonable person would have felt compelled to resign. Plaintiff had accepted the modified duty from Defendant and had worked the modified schedule for almost one full year before he alleges he could no longer tolerate Defendant's decision. These allegations are insufficient to plead a plausible constructive discharge claim. Accordingly, Plaintiff's constructive discharge claim will be dismissed.

## CONCLUSION

For these reasons, Defendant's Motion to Dismiss [Doc. No. 21] is **GRANTED in part** and **DENIED in part.** Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 and the No FEAR Act are **DISMISSED with prejudice**.[5] Plaintiff's claims of hostile work environment, constructive discharge, and discrimination under Title VII, the ADEA, and the Rehabilitation Act are **DISMISSED without prejudice**. Plaintiff's retaliation claim

---

[5] "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006); *accord Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (leave to amend should be freely granted, but amendment may be denied when it would be futile). It is apparent from Plaintiff's amended complaint that he could not effectively amend his Section 1983 or No FEAR Act claims to cure the deficiencies cited herein. Therefore, amendment is futile and dismissal with prejudice is appropriate.

survives dismissal at this stage of proceedings. Plaintiff is not granted leave to file a second amended complaint at this time.[6]

**IT IS SO ORDERED** this 8th day of March, 2024.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[6] A district court may properly require a plaintiff to file a motion that complies with FED. R. CIV. P. 15(a) and LCvR15.1 before considering whether to allow an amendment. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021); *see also Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009) (finding that plaintiff "must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment"). In this case, the scheduling order to be entered pursuant to FED. R. CIV. P. 16(b)(1) will establish a deadline for motions to amend pleadings.